UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEFFREY ARMSTRONG** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-10713** |
| **BURL CAIN, WARDEN, ANGOLA** | **SECTION "A"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

**I.    Factual Background**

The petitioner, Jeffrey Armstrong ("Armstrong"), is an inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] Armstrong, through retained counsel, filed this petition for issuance of a writ of habeas corpus pursuant to Title 28 U.S.C. § 2254 challenging his 1999 conviction for unauthorized entry into an inhabited dwelling.

---

[1] Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

Armstrong was charged on October 26, 1998, by Bill of Information in Jefferson Parish with the unauthorized entry into the inhabited dwelling of John Peterson.[3] The record reflects that Armstrong and Susan Cuadrado began dating in 1996.[4] In 1998, the two were living together in an apartment in Terrytown where they became friends with Sarah and John Peterson, who also lived in the apartment complex. Cuadrado and Sarah Peterson became close friends. Both women were "retired" motorcycle bikers. Cuadrado visited the Petersons frequently. She often walked into their apartment without knocking on the door when the Petersons were expecting her to visit, or when they saw her through their window and waved her into the house. Armstrong also visited the Petersons frequently. Sarah Peterson had washed his clothes on occasion and Armstrong had used their telephone when his was disconnected. However, the Petersons did not give Armstrong permission to enter their home without knocking first.

On September 12, 1998, Cuadrado spent the day at the Petersons' apartment playing cards with the Petersons and Helen Washington, another neighbor. She had a few beers during the day and had been looking for Armstrong since noon that day. At 7:00 p.m., she left the Petersons' apartment and found Armstrong in another apartment in the complex. According to Cuadrado, an argument ensued during which Armstrong threatened to kill her and she ran, with Armstrong chasing her, to the Petersons' apartment. Both of the Petersons testified that when Cuadrado entered their apartment, she tried to close the door behind her, but Armstrong forced his way into the apartment

---

[3]St. Rec. Vol. 1 of 4, Bill of Information, 10/26/98.

[4]The facts of the case were taken from the opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Armstrong*, 756 So.2d 533, 534-35 (La. App. 5th Cir. 2000); St. Rec. Vol. 1 of 4, 5th Cir. Opinion, 99-KA-925, 2/16/00.

and began hitting Cuadrado. Sarah Peterson, a former Hell's Angels motorcyclist, separated Armstrong and Cuadrado, and shoved Armstrong out of the apartment. Washington called 911.

Deputy Serena was dispatched to the Petersons' apartment at approximately 7:20 p.m. After interviewing the witnesses, he went to Armstrong's apartment where he found him standing outside. The Deputy verified Armstrong's identity and then placed him under arrest for simple battery and unauthorized entry of an inhabited dwelling.

On February 24, 1999, Armstrong was tried by a jury and found guilty of unauthorized entry into an inhabited dwelling.[5] The Trial Court sentenced Armstrong on March 24, 1999, to serve five years in prison.[6] The State also filed a multiple bill charging Armstrong as a third offender.[7]

Armstrong's counsel filed a written motion for appeal on March 29, 1999.[8] She also filed that same day a motion for arrest of the judgment, or alternatively for new trial, based on insufficient evidence to support the verdict since he did not need to knock on the door that had already been opened by Cuadrado.[9] Counsel also filed a written response to the multiple bill alleging that the guilty pleas in the predicate cases were defective and the records of those convictions were hearsay.[10]

---

[5]St. Rec. Vol. 1 of 4, Trial Minutes, 2/24/99; St. Rec. Vol. 2 of 4, Trial Transcript, 2/24/99; Jury Verdict, 2/24/99.

[6]St. Rec. Vol. 1 of 4, Sentencing Minutes, 3/24/99; St. Rec. Vol. 2 of 4, Sentencing Transcript, 3/24/99.

[7]St. Rec. Vol. 1 of 4, Multiple Bill, 3/24/99; St. Rec. Vol. 2 of 4, Sentencing Transcript, pp. 5-6, 3/24/99.

[8]St. Rec. Vol. 1 of 4, Motion for Appeal, 3/29/99.

[9]St. Rec. Vol. 1 of 4, Motion in Arrest of Judgment and alternatively Motion for New Trial, 4/7/99.

[10]St. Rec. Vol. 1 of 4, Response to Multiple Bill, (undated).

On April 21, 1999, counsel also filed a motion to vacate the sentence, requesting a hearing on the motion for new trial, which she claimed was actually filed prior to the sentencing on March 24, 1999.[11] At a hearing held that same day, the Trial Court denied Armstrong's pending motions.[12] The Court thereafter resentenced Armstrong to five years in prison.[13] The Trial Court denied Armstrong's motion to reconsider the sentence on April 30, 1999.[14]

On June 16, 1999, the Trial Court took up the matter of the multiple bill.[15] After hearing the evidence, the Court found Armstrong to be a third offender and sentenced him to serve life in prison without benefit of parole, probation, or suspension of sentence.[16] Armstrong's counsel later filed a motion to reconsider that sentence, to which the State filed an opposition.[17] The Trial Court denied the motion on February 28, 2000.[18]

In the meantime, Armstrong's counsel raised two grounds for relief on direct appeal to the Louisiana Fifth Circuit Court of Appeal: (1) the evidence was insufficient to support the verdict; and

---

[11]St. Rec. Vol. 1 of 4, Motion to Vacate Sentence and Hearing on Motion for New Trial, 4/21/99.

[12]St. Rec. Vol. 1 of 4, Minute Entry, 4/21/99.

[13]St. Rec. Vol. 1 of 4, Minute Entry, 4/21/99; Sentencing Minutes, 4/21/99.

[14]St. Rec. Vol. 1 of 4, Motion to Reconsider Sentence, 4/27/99; St. Rec. Vol. 1of 4, Trial Court Order, 4/30/99.

[15]St. Rec. Vol. 1 of 4, Multiple Bill Hearing Minutes, 6/16/99.

[16]*Id.*; St. Rec. Vol. 1 of 4, Sentencing Minutes, 6/16/99; St. Rec. Vol. 2 of 4, Multiple Bill Hearing Transcript, 6/16/99.

[17]St. Rec. Vol. 1 of 4, State's Memorandum in Opposition, 12/29/99.  The record does not contain a copy of Armstrong's motion to reconsider the life sentence.

[18]St. Rec. Vol. 1of 4, Motion Hearing Minutes, 2/28/00.

(2) the life sentence was unconstitutionally excessive.[19] The Louisiana Fifth Circuit affirmed his conviction and sentence on February 16, 2000, finding no merit to either claim.[20]

Armstrong did not timely seek further review of this ruling. His conviction therefore became final 30 days later, on March 17, 2000.[21] *Butler v. Cain*, __ F.3d __, 2008 WL 2514644 (5th Cir. Jun. 25, 2008) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

Over four months later, on July 31, 2000, Armstrong submitted pro se a writ application to the Louisiana Supreme Court alleging that his life sentence was unconstitutionally excessive.[22] The Court denied the application without reasons on June 1, 2001.[23] The Court also denied Armstrong's subsequent request for rehearing on August 24, 2001.[24]

On September 24, 2001, Armstrong filed pro se an application for writ of certiorari with the United States Supreme Court.[25] The Court denied the application without reasons on December 3, 2001.[26]

---

[19] St. Rec. Vol. 2 of 3, Assignment of Errors, 99-KA-925, 9/27/99.

[20] *State v. Armstrong*, 756 So.2d at 538; St. Rec. Vol. 1 of 4, 5th Cir. Opinion, 99-KA-925, pp. 1, 10, 2/16/00.

[21] La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. *See also* La. Code Crim. Proc. art. 922(A).

[22] St. Rec. Vol. 3 of 4, La. S. Ct. Writ Application, 2000-KH-2419, 8/14/00 (postmarked 7/31/00); La. S. Ct. Letter, 2000-KH-2419, 8/14/00 (postmarked 7/31/00).

[23] *State ex rel. Armstrong v. State*, 793 So.2d 182 (La. 2001); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2000-KH-2419, 6/1/01.

[24] St. Rec. Vol. 3 of 4, Petition for Rehearing, 2000-KH-2419 (undated); *State ex rel. Armstrong v. State*, 795 So.2d 318 (La. 2001); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2000-KH-2419, 8/24/01.

[25] St. Rec. Vol. 1 of 4, U.S. S.Ct. Letter, 01-6608, 10/3/01.

[26] *Armstrong v. Louisiana*, 534 U.S. 1058 (2001); St. Rec. Vol. 1 of 4, U.S. S.Ct. Letter, 01-6608, 12/3/01.

Four months later, on April 2, 2002, Armstrong filed an application for post conviction relief with the Trial Court raising three grounds for relief:[27] (1) counsel was ineffective for failure to challenge by written response the validity of the predicate convictions in the multiple bill; (2) counsel was ineffective for failure to file a written response to the multiple bill to challenge the cleansing period; and (3) counsel was ineffective for failure to move for a downward departure from the mandatory life sentence based upon the non-violent nature of his prior convictions.

On May 28, 2002, the Trial Court denied the application finding that the first two claims were procedurally barred from review because they could have been raised on direct appeal and were not.[28] The Court also found no merit to the third claim because the Louisiana Fifth Circuit had already determined that the record contained no basis for a downward departure.

Counsel thereafter enrolled on behalf of Armstrong and timely filed a writ application with the Louisiana Fifth Circuit raising two grounds for review:[29] (1) trial counsel was ineffective for failure to request a responsive verdict of criminal trespass; and (2) trial counsel was ineffective for failure to move for reconsideration of the sentence and a downward departure from the mandatory life sentence.

On September 4, 2002, the Louisiana Fifth Circuit denied the writ application finding that the first claim had not been raised to the Trial Court and therefore was not properly before it. The Court found the second claim to be without merit because the record contained no basis for a downward departure and the sentence was already affirmed on appeal.

---

[27]St. Rec. Vol. 1 of 4, Uniform Application for Post Conviction Relief, 4/2/02.

[28]St. Rec. Vol. 1 of 4, Trial Court Order, 5/28/02.

[29]St. Rec. Vol. 1 of 4, Motion to Enroll as Counsel of Record, 6/22/02; Notice of Intent to Seek Application for Supervisory Writs, 6/26/02. The Trial Court therein granted counsel until July 29, 2002, to file the writ application.

Armstrong's retained counsel pursued the same two claims in a timely writ application filed in the Louisiana Supreme Court.[30]  On September 5, 2003, the Louisiana Supreme Court issued a per curiam decision granting in part and denying in part the application.[31]  The Court granted the writ for the purpose of remanding it to the Trial Court for an evidentiary hearing and ruling on whether trial counsel was ineffective for failure to request that criminal trespass be included as a responsive verdict.  The Court denied the application "in all other respects" citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[32]

On December 9, 2004, the Trial Court held a hearing on the issue of ineffective assistance of trial counsel for failure to request the responsive verdict of criminal trespass.[33]  After hearing the argument and testimony, the Court denied relief finding no merit to the claim.[34]

Counsel filed a writ application with the Louisiana Fifth Circuit raising three grounds for relief:[35] (1) the Trial Court erred in denying relief on the claim; (2) counsel was ineffective for failure to request criminal trespass as a responsive verdict; and (3) Armstrong was prejudiced by counsel's failure to request the responsive verdict.

---

[30]St. Rec. Vol. 1 of 4, La. S. Ct. Writ Application, 02-KP-2464, 10/4/02 (by hand); St. Rec. Vol. 3 of 4, La. S. Ct. Letter, 2002-KP-2464, 10/4/02 (by hand).

[31]*State v. Armstrong*, 855 So.2d 731 (La. 2003); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2002-KP-2464, 9/5/03.

[32]In *Melinie*, the Louisiana Supreme Court, relying on La. Code Crim. P. art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post conviction relief.

[33]St. Rec. Vol. 1 of 4, Minute Entry, 12/9/04; Hearing Transcript, 12/9/04.

[34]*Id*.

[35]St. Rec. Vol. 1of 4, 5th Cir. Writ Application, 05-KH-176, 2/17/05.

The Louisiana Fifth Circuit denied the application because counsel's decision was one of trial strategy and no prejudice was shown because a verdict of guilty was returned.[36]

Counsel sought review in the Louisiana Supreme Court raising three grounds for relief:[37] (1) the Trial Court erred in denying relief where counsel was ineffective for failure to request a jury instruction on the lesser offense of criminal trespass; (2) counsel was ineffective for failure to request the responsive verdict of criminal trespass; and (3) the court of appeal erred in denying the writ application. The Louisiana Supreme Court denied the writ application without reasons on November 29, 2005.[38]

Over eight months later, on August 14, 2006, Armstrong's counsel filed a motion in the Trial Court seeking to modify or amend the life sentence by retroactively applying 2006 changes to the multiple offender laws.[39] The record provided by the State does not contain a final ruling on the motion.

## II. Federal Petition

On November 29, 2006, Armstrong, through retained counsel, filed a petition for federal habeas corpus relief raising two grounds for relief:[40] (1) the trial court failed to give a jury instruction on the lesser included offense of criminal trespass; and (2) ineffective assistance of counsel for failure to request a responsive verdict of, and a jury instruction, on criminal trespass.

---

[36]St. Rec. Vol. 1 of 4, 5th Cir. Order, 05-KH-176, 3/9/05.

[37]St. Rec. Vol. 3 of 4, La. S. Ct. Writ Application, 05-KP-898, 4/7/05; St. Rec. Vol. 4 of 4, La. S. Ct. Letter, 2005-KP-898, 4/8/05 (by hand 4/7/05).

[38]*State v. Armstrong*, 916 So.2d 166 (La. 2005); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2005-KP-0898, 11/29/05.

[39]St. Rec. Vol. 4 of 4, Motion to Modify or Amend Sentence, 8/14/06.

[40]Rec. Doc. No. 1.

Counsel later filed a supplemental petition raising two additional claims:[41] (3) insufficient evidence to support the conviction; and (4) a trial witness wants to recant her testimony further showing the insufficiency of the evidence.

The State filed a response in opposition to Armstrong's petition alleging that the petition was not timely filed.[42] The State also argues that Armstrong's fourth claim, regarding the recanting of trial witness testimony, was not raised in the state courts and is not properly exhausted.

### III. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[43] applies to Armstrong's petition, which was filed by retained counsel on November 29, 2006. The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State argues that Armstrong's petition was not timely filed and that he has not exhausted available state court remedies. A review of the record reflects that Armstrong's petition is not timely filed. Furthermore, the record demonstrates that Armstrong failed to exhaust state court remedies as to his fourth claim regarding the recanted witness testimony.

---

[41] Rec. Doc. No. 9.

[42] Rec. Doc. No. 10.

[43] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

## IV.     Exhaustion Requirement

Armstrong raised two supplemental claims after the initial filing of his petition. One of those claims alleges that a trial witness now wishes to recant her testimony, which would bolster his assertion that the evidence was insufficient to support the verdict.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not

specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id*. at 32.

The ultimate goal of the exhaustion doctrine is to assure that the state courts, specifically the state's highest court, has had a procedurally proper opportunity to consider a constitutional claim before federal habeas corpus relief is pursued. Since his conviction, Armstrong has filed three writ applications with the Louisiana Supreme Court. As outlined above, a review of those petitions, and those filed in the lower courts, reflects that Armstrong did not raise the claim or otherwise argue that a trial witness has recanted her testimony. Armstrong has not presented this claim to any state court, much less to the Louisiana Supreme Court as is required for exhaustion.

The record discloses no good cause for Armstrong's failure to properly exhaust and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Therefore, this petition is subject to dismissal without prejudice to allow petitioner to pursue complete exhaustion in the state courts. *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (quoting *Rose*, 455 U.S. at 510); *Whitehead*, 157 F.3d at 387.

Should Armstrong withdraw the unexhausted claim or amend his complaint to raise only the exhausted claims, he still would not be entitled to federal review. As argued by the State, the record demonstrates that Armstrong's federal petition is not timely filed and must be dismissed with prejudice for that reason.

## V.    **Statute of Limitations**

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[44]  *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).  As set forth above, Armstrong's conviction became final on March 17, 2000, when he did not timely pursue review in the Louisiana Supreme Court after his direct appeal.  A state conviction is final for AEDPA limitations purposes at the conclusion of the original period for seeking direct review.  *Butler*, 2008 WL 2514644, slip op. at *2; *see also*, *McGee v. Cain*, 104 Fed. Appx. 989, 991-992 (5th Cir. July 28, 2004).  The United States Fifth Circuit Court of Appeals has made clear that a late filed Louisiana Supreme Court writ application does not act to continue the direct appeal process and therefore does not bear on the finality of a conviction.  *Id*., at *2.

Thus, under the plain language of § 2244, Armstrong had until Saturday, March 17, 2001, or the next business day, March 19, 2001, to file a timely federal application for habeas corpus relief and he failed to do so.  Thus, literal application of the statute would bar Armstrong's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

---

[44]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
- A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
- B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
- C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
- D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

Section 2244(d)(2) provides that the time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a State post conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). Timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also*, *Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 2001 WL 995164, slip op. at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or

claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, Armstrong's AEDPA filing period began to run on March 18, 2000, the day after his conviction became final. The filing period ran for 365 days, until Saturday, March 17, 2001, or the next business day, March 19, 2001, when it expired. Armstrong had no properly filed state post conviction or other collateral review pending during that time period.

The Court is well aware that Armstrong filed a writ application in the Louisiana Supreme Court on July 31, 2000.[45] As indicated above, this application was not timely filed under La. S. Ct. Rule X§5, which requires that an application be postmarked or filed within 30 days after issuance of the appellate court's opinion. The application also was denied by the Louisiana Supreme Court on June 1, 2001, without reasons, as was the related request for rehearing on August 24, 2001. Armstrong cannot benefit from any tolling during this time for the following reasons.

First, the United States Fifth Circuit has held that a late-filed writ application to the Louisiana Supreme Court after direct appeal does not invoke tolling under § 2244. *Butler*, 2008 WL 2514644, slip op. at *3. Second, a writ application to the Louisiana Supreme Court which fails to comply with La. S. Ct. R. X§5(a) is not properly filed because it is untimely, and no properly filed post conviction review could be pending for purposes of AEDPA's statute of limitations and tolling doctrines. *Butler*, 2008 WL 2514644, slip op. at *3, *4; *Williams v. Cain*, 217 F.3d at 309-11; *see Pace*, 544 U.S. at 414.

---

[45]This is the date is was signed by Armstrong. Affording him every benefit, this is presumed to be the earliest date he could have given it to prison officials for mailing to the Louisiana Supreme Court.

Furthermore, the later-filed request for reconsideration in the Louisiana Supreme Court also would not be considered a properly filed state court pleading under Louisiana law or for tolling purposes. Under La. S. Ct. Rule IX§6, "[a]n application for rehearing will not be considered when the court has merely granted or denied an application for a writ of certiorari or a remedial or other supervisory writ." Armstrong's Louisiana Supreme Court writ application was denied without stated reasons. Under this rule, he had no right to seek rehearing in the Louisiana Supreme Court and therefore would gain no tolling for the improper filing. *Cf. Gaudet v. Cain*, 31 Fed. Appx. 835, 2002 WL 243278 at \*\*1 (5th Cir. Jan. 18, 2002) (application for rehearing in state circuit court did not toll the AEDPA limitations period); *see also*, *Scott v. Cain*, 2002 WL 1484385 at \*2 n.17 (E.D. La. Jul. 10, 2002) (Louisiana Supreme Court ruling is final when ordered in light of the Rule IX§6 disregard for rehearing applications).

Finally, the United States Supreme Court writ application filed by Armstrong on September 24, 2001, affords no post conviction tolling under the AEDPA. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (Section 2244(d)(2) does not allow for statutory tolling as the result of a federal petition to the United States Supreme Court after a conviction is final),[46] *cert. denied*, 529 U.S. 1099 (2000); *Grooms v. Johnson*, 208 F.3d 488 (5th Cir. 1999) (applying the *Ott* rule to disallow statutory tolling for prior federal habeas corpus petition).

---

[46]In *Ott*, the United States Fifth Circuit recognized that the 90-day period for filing an application for writ of certiorari with the United States Supreme Court is to be considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A) when a state petitioner proceeds in a timely manner through the state's highest court in the direct appeal process. *Geisberg v. Cockrell*, 288 F.3d 268 (5th Cir.) (for purposes of the AEDPA, a state conviction becomes final when a petition for certiorari is denied by the United States Supreme Court), *cert. denied*, 537 U.S. 1072 (2002); *Crutcher v. Cockrell*, 301 F.3d 656 (5th Cir. 2002); *Hoffman v. Louisiana*, 768 So.2d 592 (La.) (conviction not final until application for writ of certiorari to U.S. Supreme Court is denied), *cert. denied*, 531 U.S. 946 (2000). As discussed herein, Armstrong did not timely complete his direct review in the Louisiana Supreme Court and he is therefore not entitled to the *Ott* extended period towards finality of his conviction.

The Court also notes that Armstrong allowed several other periods of time to lapse between his state court filings, which served to further delay his federal petition. For example, Armstrong allowed 135 days to lapse between the finality of his conviction and his submission of the untimely Louisiana Supreme Court writ application on July 31, 2000. He allowed another 220 days to lapse between the denial of the United States Supreme Court writ application and the filing of his application for post conviction relief in the state trial court. He also allowed another 364 days to lapse between the denial of his last Louisiana Supreme Court writ application on November 29, 2005 and the filing of his federal petition on November 29, 2006. Thus, even if a reviewing court, were to considered alternative tolling arguments, these combined lapses in time are sufficient to support a finding that Armstrong's federal petition is not timely under the AEDPA.

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002). Armstrong has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.

Armstrong's federal petition was filed by counsel in this Court on November 29, 2005, which was over four years and eight months after the AEDPA filing period is deemed to have expired on March 19, 2001. His petition must be dismissed with prejudice as untimely.

**VI.     Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Armstrong's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 22nd day of July, 2008.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**